Our next case for argument is 24-1541 Netflix v. DivX. Mr. Fleming, please proceed. Good morning, and may it please the Court, Mark Fleming from WilmerHale, together with Laura Matlock Colangelo and Nora Zhu on behalf of Netflix. The Board originally called our view the more natural and the more grammatically correct construction, and in its first final written decision, which this Court reviewed in the last appeal, it reiterated that DivX's interpretation of limitation L was unpersuasive. On remand, though, it decided for the first time that the modifier at issue modifies not the noun phrase that immediately precedes it, but instead modifies a more remote term, encryption information. That's contrary to the plain language and to the intrinsic record. I think I have a bee in my bonnet about the use of the word plain. I don't think that whatever else is going on here is plain. This is a language structure that is very, very common, and precisely because it so plainly is susceptible as a syntactic matter to two different ways of interpreting it. There is a very strong background principle of default interpretation. I don't view that as plain, but I do view it very much as ordinary and natural against the background of the rule. I don't disagree with that at all, and I hope I didn't say plain. I think I meant to say claim language. That's what I meant to say.  I'm very sorry. And your brief is, I'd say, about 90% careful in avoiding the use of the word plain. It was my attempt to be so careful this morning as well. There was a lingering 10%. Well, I apologize for the 10%, and it was not my intent to say that this morning. In fact, I was going to—I mean, I hope I don't have to convince the court that the background principles of grammar and usage are relevant to claim construction, but they're particularly applicable in the context of this particular claim. The context supports putting the partially encrypted frames in the requested stream portions. There is no context whatsoever suggesting that where the encryption information goes is of any consequence to this claimed invention. Limitation M locates the encryption information that calls out the relevant video frame parts, which are going to be decrypted and then played back. And it's important that those frame parts be within the requested portions of the selected stream because that's what the viewer wants to watch. And then Limitation M uses the encryption information to decrypt them in the requested stream portions, and Limitation N, as in Nancy, plays them back because that's what the viewer has requested. Nothing about where the encryption information is relevant at all to that. It could be situated anywhere. We're not saying they can't be within the requested stream. Where's anywhere? It could be in a top-level index file, which is outside of the requested stream portions, but still on the system. That is something that's perfectly doable, and there's no evidence on the other side suggesting it can't be done that way. And our point is simply you can do it either way. That's what our expert testified to, and there isn't ultimately any dispute on the other side that that's technically possible, and there is nothing in the specification. Did your expert talk about putting it in the top-level index file? He said it could be done inside or outside the cluster, which is how the patent refers to the requested portions of the selected stream. He said they could be inside or outside, and we cite three embodiments where the encryption information is referenced, but it is not put within the requested portions of the selected stream. Those are in columns 3, 5, and 7. Once again, there are embodiments, this isn't disputed, where the encryption information is in the requested portions of the selected stream, but the invention is not limited to that. Is some sort of, I forget what you call it, the index file or something, where the grandparent or parent, grandparent, right, 522 claim refers to information of this sort, which if it has, I think your point about that is that that carries the implication that the specification supports that idea. It most certainly does. Claim 1 of the parent patent doesn't specify where the encryption information goes. There's a dependent claim, claim 14, which does, and they're based on the same specification, and that shows indeed that as the patentee represented this to the patent office, it is possible to implement this invention without having the encryption information in the requested portions. There are other related patents, which we also cite, where the patentee showed that they knew how to specifically claim, putting the encryption information inside the selected stream, notably not in the requested portions of the selected stream, which is the board's interpretation and DIVX's interpretation, but it also shows that the patentee well knew how to recite specifically where the encryption information has to go. I'm remembering, I think, that there was a reference in the other side's brief to the idea that there is a particular benefit to be gained by putting the encryption information in the requested portions. I don't remember what record support there was for that assertion. Can you address if there was and what to make of it? I'm very glad you brought it up, Judge Toronto. There's no record support for it. There is notably no developed argument for it. This only comes up on pages six and seven of the red brief in the background section. In the argument section, it's not mentioned at all. There are a couple of references to suggest, it's attorney argument, that readily or quickly locating the encryption info is, quote, critical. That's their assertion. There's no evidence of this whatsoever. Their sites say nothing about the speed of retrieving encryption information, nor do they suggest that putting the encryption information within the requested portions in any way would affect the speed. All of this stuff is on the same system. There's nothing in the spec and nothing in the record. I don't think they even argued it to the board. Certainly the board made no finding of it. If you look at pages six and seven of the red brief, they cite column 13, starting at line 11. This is on 111 of the appendix. That portion of the spec discusses not the encryption information, but the common cryptographic keys, which is a different element. That's the element that they said was actually novel when they were describing their invention of the district court. They cite their expert's report on 9457 to 9462, Dr. Nielsen, their expert, says nothing about the speed of getting the encryption information or the DRM information. And they cite 9466 also in his report, where he doesn't even mention encryption information. So this is, I think, something that has been developed on appeal in an effort to suggest to the court that there's something important about where the encryption information is, when in fact- I agree with you, Mr. Fleming, that the board erred in its claim construction. What do we do with this case? I think because there is no dispute that under our claim construction, limitation L is satisfied by the prior art. You can reverse that finding, hold that limitation L is disclosed in the prior art, and then remand for further proceedings. There are a couple of arguments that despite this being the second appeal, the board still has not reached. And we would- A motivation to combine issue that's still kicking around? So the issue that this court remanded the last time in our last appeal, bearing on reasonable expectation of success, is still kicking around. There is a suggestion in the previous opinion that there might be a motivation to combine issue. That was the focus of the argument on remand. So those things need to be decided. I hope there wouldn't be a third appeal in this case, but I would hope that at the very least the board would address all the issues so that if there is a third appeal, this court will have everything before it. There are a number of errors in the actual analysis the board put in front of the court. I'd just like to very quickly tick through them if I may. The first is it misunderstood the reference to the Matroska container files. It believed that this invention was limited to a modified Matroska container file. That's contrary to the patent. Column 20 on A114 and column 23 say that in a number of embodiments, the invention uses a standard or a conventional Matroska container. And that's important because DIVX admits, they say it on page 7 of their brief and their expert admitted it in paragraph 90 of his declaration, that a standard Matroska container file cannot contain the encryption information. So if the invention can be implemented with a standard Matroska container file, it must be at least possible to put the encryption information somewhere else. Relatedly, the board erred in thinking that the location of the encryption information was what it called a central aspect of the claim. Again, it's only a citation for that was the conclusory assertion by their expert, Dr. Nielsen, which refers back to this mistake about the Matroska container. There was also, the board wrongly thought it was unnecessary to specify where the encrypted portions of frames would be because limitation M subsequently does not say where they are. Of course, the reason limitation M doesn't say it is because it takes antecedent basis from limitation L, which already specifies that the frames are in the requested portions of the stream, which is what the viewer wants to watch. And finally, there was a significant error as to the embodiments disclosed in the spec. The board believed that every embodiment in the specification put the encryption information in the requested portions. That's not true. And it wouldn't matter even if it was because as this court has said in numerous cases like Hillaram and Verizon versus Vonage and just in 2024 after our opening brief was filed, but it's cited in our reply brief, Koning-Leike-Phillips versus Quechtel, all that shows is that the embodiments are consistent with but not required by what's identified as the invention. So unless the court has any further questions at this time, I reserve the balance of my time for rebuttal. Mr. Loewenstein. Good morning, Your Honors. Nathan Loewenstein for DivEx and may it please the court. The board's construction of limitation 1L should be upheld because it is consistent with the plain meaning. I hope that doesn't upset you in Toronto. I'm not saying it's the only possible interpretation, but it's certainly consistent with the plain meaning. And you don't need to take my word for it. You could even read the dissenting judge's opinion. He said our construction is not incorrect. He said it is reasonable. And he says at the outset, everyone seems to agree that the limitation could be read one of two ways, as I think Your Honor alluded to at the outset. And so the question is, what would a person of ordinary skill in the art reading the specification, how would he or she interpret this limitation? And so we have a self-contained limitation. It starts with the clause, locating encryption information. And then there are two more clauses. The second one tells us what type of encryption information we are locating. And the third clause tells where are we going to locate that type of encryption information. And I think the board reasonably found that there's a natural relationship between the You keep saying reasonable. Do you think we have to give deference to the board's claim construction? Only to the factual findings. What factual finding is there? So they made numerous factual findings about, so first of all, both experts. But the question is one of grammar on claim construction for the most part. So we don't give deference to that. I mostly agree with that, with the exception that in the Knowles case, this court said that you give things like the board's understanding of a dictionary, a treatise is reviewed for substantial evidence. And so the board, for instance, looked at grammatical treatises and found instances in those grammatical treatises that support our interpretation. And so I believe with that one distinction, I believe that sort of finding is reviewed for substantial evidence. So and maybe we should pause there for a moment. So clearly the claim is susceptible to this interpretation because the rule that they say, the modifier has to be right next to the thing being modified. That comes from, for instance, Strunk and White. Strunk and White gives an exemplary example. The lawnmower that is broken is in the garage. There's no commas. And we could rewrite that to say, locating the lawnmower that is broken within the garage. What are the two possible modifications of the modifier in the garage? There's only one lawnmower. Correct. Correct. It's not the same as this, where there are two possible ones. My point is that it's very typical to have a clause with two trailing modifiers. And when you have a clause with two trailing modifiers, they can't both be immediately adjacent to the thing being modified. Well, there are, and I think you even pointed to, there are ways of making that clear when that's what you want to do using the word. And you had a version with commas. That was, I don't think any commas are necessary. And if you look at the, what I see as a parallel from the same grammatical treatise, there's no comma in the lawnmower that is broken is in the garage. And if I were... Because there aren't two possible modifications. Well, I understand, Your Honor, but if someone put commas in there, I would tend to think they're unnecessary. And so clearly there's a relationship between the word, or there's often a relationship between the word locating and within. And it does beg the question of where is the encryption information being located? And that's where we get to the intrinsic record. And there the board found that it only supports one possible interpretation. And that's because every single time this type of encryption information is mentioned, everywhere and always, it is within the requested portion of the video. What about the portion that says it's not as detailed an embodiment, which I think is as some of the other specific embodiments, but the portion that says you can do this with an ordinary Matroska container, not the modified one? I think Your Honor is referring to the section... Item of column 20 is... Column 20. It's the middle of column 20, if memory serves. And so in that context, what they're talking about is requesting cluster elements. And you could modify it or not in that context. There's no statement that is disconnected from any statement about the type of encryption information that we're concerned with, which is the type that identifies which portions of the frame are encrypted. And so there's no statement anywhere in the patent that locates this type of encryption information anywhere else. And if I may, if it's reasonable to Your Honor, I think you asked the question... Well, you asked a couple of questions I'd like to address to my friend. The first was, you said, well, are there any benefits to this? And I would direct Your Honor to Appendix 110, Column 11, Lines 45 to 50. That says, the Mistroken Container File are specialized container files that include enhancements. Elements that do not form part of the Mistroska file format specification that facilitate retrieval and decryption using common cryptographic information. And so that's a clear statement that this is a specialized container format. It is an enhancement and it facilitates decryption because, of course, it does. We're in an adaptive bit rate streaming context where you're trying to do things as quickly as possible. You want to do the best possible streaming quality at any given time. And obviously, you need to know which portions are encrypted and you need to identify that immediately. And so what the patent teaches, I'm not saying this level of detail is required, but it puts this type of encryption information with the frame. So the playback device, again, I'm not saying the claim has to include that level of detail, but the benefit is the playback device knows immediately where, what portion of the frame is encrypted, so it can immediately decrypt it. So clearly there's a benefit and clearly the board's fine. Where does this say there's a benefit? It says it's done. Where does it say it's a benefit? So just focusing on the same thing I just read, Your Honor, I think it's implicit in the word specialized and enhancement. And then it says facilitate retrieval. You're reading from where? Just column and line number. 1145 to 50. And this, by the way, Your Honors, was 1145 to 50.  And this, by the way, was relied upon by the board and also Dr. Nielsen. So implicit, Judge Dyke, in the words specialized and enhancement, and then facilitate retrieval and decryption. I mean, it doesn't say it's a benefit, but I don't know how to read that any other way than that it's a benefit. What about the three words that begin the sentence, in many embodiments? Doesn't that make clear that the invention at least can work without these enhancements? So let me answer it like this. If the limitation in question said, locating encryption information that identifies the portions of the frame that are encrypted, and it's not there, then my argument would have no merit. Because then I would be adding something to the claim that's not there. I'd be asking you to add something from the embodiments that's not there. And all their criticisms would be sound. But the real question is, how would a BZETA interpret that clause using the words that are there? How would they understand the relationship between locating encryption information and within the requested portion of the video? And there, I think, the BZETA is going to look at where is that information? I'm not understanding what you're saying. The question was, this says in many embodiments, it's in a specialized Matryoshka container file, which suggests that in other embodiments, it's not. I understand your question, Your Honor. And my point is that the question is, how do you parse that in terms of this limitation? And so what sort of embodiment are we talking about? The embodiment we're talking about is where you're locating encryption information within the requested portion. Because that's the only place, that's the only location for that type of encryption information that is ever identified. I heard my friend say something about it being located in the top-level index file. There is no disclosure to that effect. Am I remembering right, and I just may be incorrect, that the 522, which I think is the grandparent, has maybe it's claim one, puts this information, and there may be an error in this, in an index file? I'm glad you asked, because that was actually the other thing I wanted to clarify. So there's a lot of confusion about, I want to make it clear, I'm not making an argument that DRM information is something different from encryption information. It's one type. Well, the question is, how is it modified? So when claim one of our patents says, encryption information that identifies the encrypted portions of the frame, that is modifying encryption information. I don't think anyone disputes that. And then, but that's not the type of DRM information we're talking about in claim one of the 522 patent. So if I may, this is on Appendix 6328, there it says, a set of DRM information that identifies protected portions of the alternative streams of protected video. So we see there's no mention about encrypted frames, or partially encrypted frames, or the location of what is encrypted in the frame. It's a different type of encryption information, DRM information, whatever you want to call it. Now, then I would like to look at claim 14 of the 522 patent, which is on the next page, Appendix 6329. And there we start talking about the type of encryption information that is at issue in claim one of the 588 patent. And there it says, the Matryoshka container, I'm paraphrasing, the Matryoshka container files includes a set of block group elements that each contain a DRM info element. Now note, that's not the same word as DRM information. A DRM info element, and an encrypted frame of video where the DRM info element is part of the set of DRM information for each of the container files. And so then you go down and you parse the block group element to obtain a DRM info element indicating at least a portion of the encrypted frame of video. And so what this tells us, claim 14, is that the type of encryption information we're talking about in claim one of the 588 patent, that also in the 522, is located with the repressive portion of the stream. And so I would just like to, and I agree with Judge Moore that much of this is de novo review, so I'm not trying to re-litigate that. But nonetheless, this is a situation where one side addressed the claim construction issue, the other side had two declarations, never addressed it, did not dispute our expert's opinions, did not challenge our expert when he said every embodiment that addresses where the location is, is where he says it is. In fact, in deposition, he agreed. Well, if I remember right, it went on for six or seven pages in the deposition where, as I was inferring, the witness was trying to be very careful about how much was implied by the word embodiment, and eventually agreed. If what you mean by embodiment is something labeled as an embodiment and then elaborated with details, then you're right. But there are other language in the spec, he said, that indicates this can be done without this particular location. And you could call those embodiments, but if you don't want to call those embodiments, that's fine. But let's just be clear about what I'm saying. Let me say what I think the heart of the matter is, and I think everyone will disagree with, even though there's been some attempt to, I don't want to put it any way, but I think what everyone agrees is every time this type of encryption information is, a location is mentioned in our patent, it is always with the requested portion of video. And so they point to statements about embodiments, this embodiment, but the only time there's every location noted, it's within the requested portion of video. And I think of Bazita, reading that is not going to import something into the claim, because that's not what we're doing, is going to look at the claim. But if the structure of the analysis is that the language of this claim element initially alone would naturally be read according to the usual, very strong grammatical rule for a context where there are two possible modificands, that the modifier is tied to the closer one, that that makes particular sense in the context of the claim language as a whole, given what M is saying. And then you look and you see, is there something in the spec that says, oh, don't go there, that the mere fact that each elaborated embodiment does have that feature, with other indications that, in more general terms, that it need not, that feels like it's enough to leave the inference from the language in Netflix's favor. So you made two points that I would like to address there, Your Honor. And I'll do them in the reverse order of how you stated them. The first, I think what you were essentially asking me was, does limitation 1M, the claim as a whole, favor their interpretation? And I think the answer to that is no. So if you look at the limitation in question, it says, locating encryption information that identifies the encrypted portions of the frame within the requested portion of the video. So they make an argument that, well, it could be for some different frames that aren't in the requested portion of the video. But you can always practice a claim in some absurd fashion or some unreasonable fashion, but that doesn't really bear heavily upon how the claim should be interpreted. And the most reasonable way to practice this invention is that the encryption portions of the frames will, of course, be for the frames that are requested. Can I ask you something about M? After you've located whatever you're going to locate, you then decrypted each encrypted portion of the frames of video identified within the located encryption information. That should say encrypted, should it not? You're not decrypting information within the encryption information. The encryption information is a sentence that says, here are the items that are encrypted. And that had better not, that sentence had better not be encrypted or the reader of it won't know what it says. I'm sorry, I may be missing the point. So I apologize if I am. The limitation seems to make sense to me insofar as it says, you're decrypting each encrypted portion of the frames of video identified within the located encryption information using the set of common keys. And so that seems fully consistent with the limitation that came before it, because you're finding the encrypted portions, then you're decrypting them with the located encryption information. So I'm probably missing, yeah, I'm sorry, I'm past my time, but just very briefly, I would like to, the other thing I wanted to quibble with or take issue with. You have about 10 seconds. I won't, okay. So you said that there's a very strong presumption. We cited many, many decisions where it's not a very strong presumption at all. That's all I wanted to say. Thank you, Your Honor. Thank you, Your Honor. I would begin, if I may, with this issue, which in Divick's briefs is the issue of quickly or readily finding the encryption information at argument. It has become immediately, which Mr. Glowenstein said a couple of times, but he cited nothing for it except for column 11, and I think it's worth looking exactly at the language. This is on 110 of the appendix, column 11, beginning at line 45. It begins, in many embodiments, Judge Toronto, as you pointed out, the Matroska container files are specialized Matroska container files that include enhancements, i.e. elements that do not form part of the Matroska file format specification that facilitate retrieval and decryption using common cryptographic information of specific portions of media during adaptive bit rate streaming. So certainly the elements, the enhancements can facilitate retrieval and decryption, but there's nothing in here suggesting that where the encryption information is located is of any concern whatsoever, and certainly not that it will affect the speed or the immediacy of retrieval or functioning of the process. If this was something special or essential or central, as the board put it, one would have expected someone to say it. If not in the specification, then in their expert report, in the board final written decision, or in the original claims for that matter. But this was not something that was even in the original claims. It was added through examiner amendment. With respect to the embodiments, I didn't hear Mr. Glowenstein address the three that we rely on in columns 3, 5, and 7, which specifically do mention the encryption information. They specifically do mention a location for it, and it is not within the requested portions of the selected stream. It's simply within the alternative streams, not within the requested portions. That is not something that those embodiments suggest is in any way important. I hope it's clear that this is de novo review. Mr. Glowenstein cited the Knowles case that Knowles simply cites to Teva for the proposition that when you're citing a scientific or a technical treatise that shows a technical meaning in the art, and there's a finding about that, then that is something that can be reviewed for substantial evidence. There's nothing like that here. No one is suggesting that the word within somehow has a technical meaning in this art any differently from how we would use it using the ordinary rules of English grammar read in light of the specification. Can you address my confusion about whether there's a language problem with element M? Yes, Your Honor. As I – and again, this isn't something on which anyone has engaged. But as I understand – It's encryption versus encrypted. It's actually they're twice the board misuses one for the other, twice in the same paragraph their expert misuses one for the other. So I guess I'd like to understand whether this is another example. So it's not the best drafted limitation. As I have always understood what's going on in limitation M, as in Michael, is that the encryption information identifies the encrypted portions of the frames of video. What I was thinking is that either you change encryption to encrypted, but leave the within, or you change within to by. I think that would be better, certainly. But I think that's what they meant. I think they meant to say located – identified by. I think what this also shows, you know, to the extent Divex is still arguing that there's some kind of natural relationship between located and within, which again is something they don't have any evidence for. It's a turning argument. This limitation shows there's an equally natural relationship between identified and within. And there's nothing unnatural about saying I'm going to identify something within something else, which is what our reading of limitation L does. By way of conclusion, I think the public has a right to rely on what they wrote in their claim. They could have amended it in prosecution. They could have amended it in the IPR under 316D. Having not done so, the claim should be construed as it is written, not as they now wish they had written it, in light of the ordinary rules of English grammar and in light of the context that's set forward in the claim without limitation through the specification. So unless the court has further questions, we'd respectfully submit that the construction should be reversed. The court should direct that limitation L is disclosed by the prior art and direct that on remand the board decide all further outstanding issues in this case. I thank the court for its attention.